IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-00512-D-BM

| | |
|---|---|
| DANTONIO COLVIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **MEMORANDUM AND** |
| | ) **RECOMMENDATION** |
| MARTIN O'MALLEY, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

Plaintiff Dantonio Colvin ("Plaintiff" or, in context, "Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). This matter is before the court on Plaintiff's brief [DE-14] seeking judgment in his favor and Defendant's responsive brief [DE-16] in opposition. The time for filing responsive briefs has expired pursuant to the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), and this case is ripe for adjudication. The briefs were referred to the undersigned magistrate judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1). Having reviewed and considered the record, the administrative transcript, the briefs submitted by the parties, and the applicable law, it is recommended that Plaintiff's brief [DE-14] be allowed, Defendant's brief [DE-16] be denied, and the case be remanded to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

## I. STATEMENT OF THE CASE

Plaintiff protectively filed applications for a period of disability, DIB, and SSI on May 14, 2021, alleging disability beginning January 1, 2019. Transcript of Proceedings ("Tr.") 112, 275-

88. His claim was denied initially. Tr. 112-37, 173-82. Plaintiff filed a request for reconsideration (Tr. 183-84), and was denied upon reconsideration on October 18, 2022 (Tr. 138-67, 185-93). On October 24, 2022, Plaintiff requested a hearing before the Administrative Law Judge ("ALJ"). Tr. 196-97. A hearing before the ALJ was held on April 13, 2023, at which Plaintiff, represented by counsel, and a vocational expert ("VE") appeared and testified. Tr. 42-81. On May 22, 2023, the ALJ issued a decision denying Plaintiff's request for benefits. Tr. 20-41.

On May 22, 2023, Plaintiff requested a review of the ALJ's decision by the Appeals Council. Tr. 270-72. On July 17, 2023, the Appeals Council denied Plaintiff's request for review. Tr. 1-6. Plaintiff then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the

[Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity ["SGA"]," *i.e.*, currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity ["RFC"] to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and §§ 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of

3

functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(4), 416.920a(e)(4).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Act. Tr. 36. At step one, the ALJ determined Plaintiff had not engaged in substantial gainful employment since January 1, 2019, the alleged onset date. Tr. 25.

Next, at step two, the ALJ determined Plaintiff had the following severe impairments: HIV; hidradenitis suppurativa, dermatitis, eczema, erythrasma, acne conglobate, dissecting cellulitis; calluses feet; major depressive disorder/bipolar disorder; generalized anxiety disorder; and substance abuse disorder. Tr. 26. However, at step three, the ALJ concluded these impairments both physical and mental, were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 26.

Applying the technique prescribed by the regulations, the ALJ found that Plaintiff's mental impairments have resulted in mild limitation in understanding, remembering, or applying information; moderate limitation in interacting with others; moderate limitation in concentrating, persisting, or maintaining pace; and moderate limitation in adapting or managing oneself. Tr. 27-28.

Prior to proceeding to step four, the ALJ assessed Plaintiff's RFC, finding Plaintiff had the

ability to perform light work[1] with the following limitations:

> [H]e is limited to 4 hours standing and/or walking over the course of a typical 8-hour workday; frequent pushing pulling, operating hand controls, reaching with the upper extremities; occasional pushing, pulling, and operating foot controls with the lower extremities; occasional climbing ramps and stairs; no climbing ladders, ropes, or scaffolds; occasional balancing; frequent stooping, kneeling, crouching, and crawling; avoid concentrated exposure to temperature extremes, humidity, and vibration; avoid all exposure to temperature extremes of heat and cold, as well as humidity; avoid concentrated exposure to workplace hazards, such as dangerous moving machinery and unprotected heights; he is able to understand and perform simple, routine, repetitive tasks, and he can maintain concentration, persistence, and pace to stay on task for 2 hour periods over the course of a typical 8-hour day with normal breaks in order to perform such tasks, in a low stress setting, which is further defined to mean no production-pace or quota-based work; rather, the claimant requires a goal-oriented job primarily dealing with things rather than people, with no more than occasional social interaction as part of the job with supervisors, co-workers, and the public.

Tr. 28-29.[2]

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that, he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a); S.S.R. 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. S.S.R. 96-9p, 1996 WL 374185, at *3. "Sitting" generally totals about 6 hours of an 8-hour workday. *Id*. A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1. *Id*.

[2] In the ALJ's written decision, he included the following statement as footnote to the RFC finding: "The undersigned recognizes various hypothetical questions were posed to the vocational expert by the undersigned and his/her attorney/representative. However, the claimant's residual functional capacity (RFC) reflects the actual limitations supported by the weight of the evidence, for the reasons explained throughout this decision. The fact that the undersigned and/or the claimant's attorney/representative might have asked the vocational expert questions about the effect(s) of greater limitation(s) than those assessed in the final RFC on the occupational base does not mean to imply the existence of these greater limitations, rather it is a means to gauge/assess the potential for restriction of the occupational base, assuming arguendo that such limitations(s) ultimately do find support by the weight of the evidence." Tr. 29.

In making this assessment, the ALJ found Plaintiff's statements about his limitations "not persuasive of disability based upon the medical and other evidence in the record[.]" Tr. 30.

At step four, the ALJ concluded Plaintiff did not have the RFC to perform the requirements of his past relevant work as an appraiser. Tr. 34. Nonetheless, at step five, upon considering Plaintiff's age, education, work experience, and RFC, the ALJ determined Plaintiff is capable of making an adjustment to other work that exists in significant numbers in the national economy. Tr. 34-35.

## V. DISCUSSION

In this case, Plaintiff alleges the ALJ erred in failing to properly evaluate Plaintiff's severe impairment of hidradenitis suppurativa under the criteria of Listing 8.06, which Plaintiff contends that he meets, and in violation of the Fourth Circuit's holding in *Radford v. Colvin*, 734 F.3d 288 (4th Cir. 2013). Pl.'s Brief. [DE-14] at 1. The court agrees in part.[3]

Specifically, Plaintiff contends that "the ALJ did not consider the criteria of Listing 8.06 with a comparison of those criteria to the medical findings in the record." Pl.'s Brief [DE-14] at 7. The Commissioner argues that the ALJ's decision, taken as a whole, demonstrates that Plaintiff has failed to meet his burden of showing that he has a medically determinable impairment that met or medically equaled the criteria set out in the Listings. Def's Brief [DE-16] at 7, 9.

To satisfy Listing 8.06, a claimant must show "[h]idradenitis suppurativa, with extensive skin lesions involving both axillae, both inguinal areas or the perineum that persist for at least 3 months despite continuing treatment as prescribed." 20 C.F.R. Part 404, Subpt. P. App'x 1 § 8.06. "Extensive skin lesions are those that involve multiple body sites or critical body areas, and result

---

[3] While the undersigned finds that remand is necessary for the reasons discussed below, he makes no definitive findings on whether or not Plaintiff meets the criteria of Listing 8.06.

in a very serious limitation." *Id.* at § 8.00(C)(1). The regulations also specify that to "persist . . . longitudinal clinical record[s] [must] show[] that, with few exceptions, [the claimant's] lesions have been at the level of severity specified in the listing." *Id.* at § 8.00(G).

At the administrative hearing before the ALJ, Plaintiff reported that he gets painful boils all over his body, including in his groin and armpits, during flareups and has trouble moving. *See* Tr. 51, 53. Plaintiff testified that he experiences flares about once a month and that he was generally missing work twice a month before being suspended. *See* Tr. 51, 52, 55, 61, 73. Medical records from UNC Dermatology indicate that on March 5, 2018, a physical examination of the relevant areas showed "numerous inflammatory nodules and sinuses, some draining involving [bilateral] inguinal folds and buttocks." Tr. 508-09. On July 25, 2019, an examination showed "numerous pink nodules, scarring, and sinus tracts of [Plaintiff's] bilateral axillae, across his chest, bilateral inguinal creases and medial thighs." Tr. 507-08. On April 27, 2020, during a telemedicine appointment, Plaintiff reported that while he experienced good improvement with 40 mg of Humira, his groin was the worst area and he was having flares about once a week. Tr. 504-05. This led Plaintiff's medical provider to increase his Humira prescription to 80mg weekly. Tr. 504-05. On May 28, 2021, UNC Dermatology found that despite Plaintiff's overall improvement on the increased dose of Humira, he was having intermittent flares and was not at goal. *See* Tr. 635. Specifically, his medical examination indicated numerous pink to hyperpigmented nodules, scarring, and sinus tracts of the bilateral axillae, across his chest, bilateral inguinal creases, and medial thighs. *See* Tr. 636. On May 6, 2022, a physical examination of Plaintiff's skin showed multiple interconnected sinus tracts at the bilateral axillae, chest, scalp, and groin. *See* Tr. 1021-22. On September 26, 2022, UNC Dermatology documented that Plaintiff continued to have various rashes on his scalp, arms, groin, and legs and was reporting flares occurring once a week,

7

although they were of shorter duration on his doxycycline medication. *See* Tr. 1276. This appointment assessed Plaintiff with the follicular occlusion triad of severe hidradenitis suppurativa, dissecting cellulitis, and acne conglobata. Tr. 1275. Plaintiff argues that "since 2018-2019, he has maintained his course of prescribed treatment, with the exception of a brief time during the pandemic when he ran out of medication, and has continue to have painful flares of hidradenitis suppurativa at multiple areas with persistent flares in the inguinal area." Pl.'s Brief [DE-14] at 6-7.

At step three, the ALJ's determined that Plaintiff's severe impairment did not meet Listing 8.06, because "[t]he record does not show the claimant has hidradenitis suppurativa, with extensive skin lesions involving both axillae, both inguinal areas or the perineum that persist for at least 3 months despite continuing treatment as prescribed and required by Medical Listing 8.06." Tr. 26. "While an ALJ need not discuss each piece of evidence, . . . omitting reference to evidence showing the presence of Listing criteria leaves a reviewing court unable to determine whether the ALJ considered that evidence in his step three analysis." *Pankey v. Saul*, No. 7:19-CV-00183-FL, 2020 WL 3816566, at *8 (E.D.N.C. June 16, 2020), *report and recommendation adopted*, No. 7:19-CV-183-FL, 2020 WL 3799343 (E.D.N.C. July 7, 2020) (citing *Brewer v. Astrue*, No. 7:07-CV-00024, 2008 WL 4682185, at *3 (E.D.N.C. Oct. 21, 2008). *Radford*, the case cited by Plaintiff in support of his position, stands for this principle. *See Radford v. Colvin*, 734 F.3d at 295 (finding that when the ALJ "summarily concluded that Radford's impairment did not meet or equal a listed impairment, [and] provided no explanation other than writing that he 'considered, in particular,' a variety of listings, including Listing 1.04A, and noting that state medical examiners had also concluded 'that no listing [was] met or equaled' . . . [it represented] insufficient legal analysis [which] makes it impossible for a reviewing court to evaluate whether substantial evidence

supports the ALJ's findings.") (citations omitted).

The Commissioner argues that "[t]he ALJ discussed [P]laintiff's hidradenitis suppurativa throughout his decision." Def's Brief [DE-16] at 9 (citing Tr. 26, 29-34). However, the Fourth Circuit has held that "[w]hen there is 'ample evidence in the record to support a determination' that [Plaintiff's] impairment meets or equals one of the listed impairments, the ALJ must identify 'the relevant listed impairments' and compare 'each of the listed criteria to the evidence of [Plaintiff's] symptoms.'" *Ezzell v. Berryhill*, 688 F. App'x 199, 200 (4th Cir. 2017) (unpublished) (citing *Cook v. Heckler*, 783 F.2d 1168, 1172-73 (4th Cir. 1986)); *see also Pankey*, 2020 WL 3816566, at *8 ("Fourth Circuit case law requires a comparison of a Listing's criteria to evidence of a claimant's symptoms when, as here, there is ample evidence supporting a determination that the impairments meet or [e]qual a Listing impairment.").

The ALJ's written decision is unclear regarding which of the Listing 8.06 criteria Plaintiff failed to satisfy. While it is clear that the ALJ found Plaintiff to have the severe impairment of hidradenitis suppurativa (Tr. 26) and that the ALJ has discussed the impairment, it is not clear whether the ALJ found that (i) Plaintiff did not have extensive skin lesions, *i.e.*, the *severity* of Plaintiff's hidradenitis suppurativa; (ii) the lesions did not involve both axillae, both inguinal areas or the perineum, *i.e.*, the *location* of Plaintiff's hidradenitis suppurativa; (iii) the lesions did not persist for at least 3 months, *i.e.*, the *duration* of Plaintiff's hidradenitis suppurativa; (iv) Plaintiff did not receive continuing treatment as prescribed and required by the listing, *i.e.*, the *treatment* of Plaintiff's hidradenitis suppurativa; or (v) a combination of these factors. *Cf.* 20 C.F.R. Part 404, Subpt. P. App'x 1 § 8.06.

1. *Severity of Plaintiff's hidradenitis suppurativa*

At the administrative hearing before the ALJ, Plaintiff testified that when his boils flareup,

9

Case 5:23-cv-00512-D-BM    Document 18    Filed 08/14/24    Page 9 of 14

sometimes he cannot move (Tr. 51) and "[c]ouldn't do so much walking and . . . tried to lay out on [his] other side" (Tr. 61). As discussed below, Plaintiff testified that he had debilitating flareups every other month that could last for numerous days. *See* Tr. 51, 61. Similarly, Plaintiff testified that before he lost his job, he was missing work approximately twice a month. Tr. 72. The vocational expert at the administrative hearing testified that missing two or more days of work per month would be work preclusive, which suggests that Plaintiff's subjective limitations, if credited, could be severe enough to prevent him from performing at full-time employment standards. Tr. 78.

With respect to demonstrating the existence of "extensive skin lesions," the Commissioner notes that Plaintiff must show "a 'very serious limitation,' such as a serious limitation in his ability to use more than one extremity, walk, or perform fine and gross motor movements." Def's Brief [DE-16] at 9. The Commissioner contends that Plaintiff has failed to show or even allege any such serious limitation. *Id.* At the very least, Plaintiff appears to allege that he had a very serious limitation in the ability to walk (Tr. 61). The ALJ also discusses medical opinions noting that Plaintiff had difficulty walking (Tr. 30) and the consultative examiner's finding that Plaintiff has "moderate difficulty with prolonged walking due to fatigue" (Tr. 33). While the ALJ may find that Plaintiff's walking difficulties are not severe enough to satisfy Listing 8.06, he does not make this clear.

    2.    *Location of Plaintiff's hidradenitis suppurativa*

The ALJ's decision notes that Plaintiff's hidradenitis suppurativa was present in his chest and groin area prior to December 2019 and in April 2020. Tr. 30. He also notes that Plaintiff "continued to experience intermittent flares of hidradenitis suppurativa" in May 2021 and February 2022, even though he "was overall improving with Humira." Tr. 30. The medical records

repeatedly document evidence of Plaintiff's symptoms on his bilateral axillae and bilateral inguinal creases. *See* Tr. Tr. 507-08; Tr. 636; Tr. 1022. Accordingly, it does not appear that the ALJ found that Plaintiff failed to satisfy Listing 8.06 based on the location of his hidradenitis suppurativa.

    3.    *Duration of Plaintiff's hidradenitis suppurativa*

With respect to the duration of symptoms, while Plaintiff reports some improvement with his hidradenitis suppurativa in response to medication, he continued to experience at least intermittent flares over a period of multiple years. *See* Tr. 30. The regulations provide that "frequent flareups" may lead to a finding that the claimant's impairment "is medically equal to one of these listings even though [the claimant has] some periods during which [his] condition is in remission." 20 C.F.R. Part 404, Subpt. P. App'x 1 § 8.00(C)(2). The regulations specify that the Commissioner "will consider how frequent and serious [the claimant's] flareups are, how quickly they resolve, and how [the claimant] function[s] between flareups to determine whether" the claimant is disabled. *Id.*

While Plaintiff testified that he only had one flareup per month and flareups preventing him from moving every other month (Tr. 61), his flareups could last for four or five days. *See* Tr. 51 (Plaintiff describing at the administrative hearing before the ALJ on April 13, 2023, a Thursday, that he had a boil flareup "this whole week" on his right buttock cheek). While the ALJ notes reports of Plaintiff's flareups, he makes no findings on the frequency and severity of the flareups and does not discuss how long it takes for Plaintiff's flareups to resolve.[4] Accordingly, the undersigned is unable to fully assess whether substantial evidence supports the ALJ's step three

---

[4] While the ALJ cites "recurring flare ups of hidradenitis suppurativa" as reason that a modified light exertional level was more appropriate than the modified medium exertional level suggested by the State agency medical consultant, his decision still fails to explain how and why Plaintiff's flareups could be accommodated within this lesser exertional level.

determination with respect to this criterion.

        4.        *Treatment of Plaintiff's hidradenitis suppurativa*

With respect to continuing treatment, Plaintiff alleges in his brief that "[s]ince 2018-2019, he has maintained his course of prescribed treatment, with the exception of a brief time during the pandemic when he ran out of medication." Pl.'s Brief [DE-14] at 6. The Commissioner argues that "Plaintiff's failure to consistently seek treatment and follow his treatment plan is more significant than he suggests." Def's Brief [DE-16] at 12 n.6. Specifically, the Commissioner points to the ALJ's findings that Plaintiff admitted that he had not followed up with his dermatologist in "quite some time." Tr. 30 (referencing Tr. 467). The Commissioner also points to Plaintiff's failure to follow up from a May 2021 appointment for his hidradenitis suppurativa, as he was required to do, and "that Plaintiff had a history of not following up with dermatology until an event caused him to seek emergency treatment." Def's Brief [DE-16] at 13 n.6 (citing Tr. 122). However, the ALJ does not point to these instances. *See Patterson v. Bowen*, 839 F.2d 221, 225 n.1 (4th Cir. 1988) (the court may only affirm an ALJ's decisions based on the reasons the ALJ gave).

Plaintiff openly discusses his financial limitations in seeking medical care (*see* Tr. 50, 61, 65), which the ALJ does not acknowledge or discuss in the written decision. *See* SSR 16-3p (Mar. 28, 2016) ("[An ALJ] will not find an individual's symptoms inconsistent with the evidence in the record on [the] basis [of a failure to seek treatment comparable with the degree of the individual's subjective complaints] without considering possible reasons he . . . may not comply with treatment . . . consistent with the degree of his . . . complaints . . . [such as an inability] to afford treatment [or a lack of] access to free or low-cost medical services"). Accordingly, while there is evidence that there were certain interruptions in Plaintiff's medical care, it is unclear from the ALJ's decision

12

whether these were significant enough to lead to a finding that Plaintiff did not satisfy Listing 8.06.

In sum, the ALJ here fails to "build an accurate and logical bridge from the evidence to his [apparent] conclusion" that Plaintiff did not satisfy the requirements of Listing 8.06. *Monroe*, 826 F.3d at 189 (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). The ALJ's written decision lacks a sufficiently fulsome discussion of whether or how "the listed criteria [compare to] the evidence of [Plaintiff's] symptoms." *Ezzell*, 688 F. App'x at 200 (internal citations and quotation marks omitted). This lack of explanation and analysis frustrates meaningful review by the court, as the court is left to guess at how the ALJ came to his conclusions.

The court also finds that this was not harmless error, as satisfying the criteria of Listing 8.06 could lead to a finding of disability. To be clear, the court expresses no opinion as to whether Plaintiff does or does not satisfy the criteria of Listing 8.06 or any other listing. The court only seeks to ensure that the ALJ properly considers the relevant evidence and fully explains his decisions, so as to permit meaningful review by the court if necessary.

Accordingly, undersigned RECOMMENDS that this case be remanded to the Commissioner for further proceedings. On remand, the Commissioner should include a narrative discussion about how the evidence leads to each conclusion regarding Plaintiff's listing criteria.

## VI. CONCLUSION

For the reasons stated above, IT IS RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [DE-14] be ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-16] be DENIED, and the case be REMANDED to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **August 24, 2024**,

to file written objections to this Memorandum and Recommendation. The presiding district judge must conduct his own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed by **the earlier of 14 days from the filing of the objections or September 5, 2024**.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Submitted, this 14th day of August, 2024.

_____
Brian S. Meyers
United States Magistrate Judge